UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ABDIKHADAR JAMA, *et al.*,

Plaintiffs,

v.

GOLDEN GATE AMERICA LLC,

Defendant.

Case No. C16-0611RSL

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND GRANTING PLAINTIFFS' LEAVE TO AMEND

This matter comes before the Court on "Defendant Golden Gate America LLC's Motion for Summary Judgment." Dkt. # 29. Plaintiffs filed a class action complaint alleging that their employer failed to pay an hourly rate of $15.00 after January 1, 2014, when Chapter 7.45 of the City of SeaTac Municipal Code went into effect. Golden Gate argues that it does not fall within the definition of "Transportation employer" and is therefore not subject to the ordinance. It seeks summary dismissal of plaintiffs' claims.

There is no genuine dispute regarding the relevant facts. At the time the ordinance went into effect, Golden Gate had a contract with EAN Holdings LLC (d/b/a Enterprise Rent-A-Car) to move vehicles to the car washing area of the rental facility, to clean, wash, vacuum, fuel, and otherwise prepare the vehicle for the next customer, and to return

the vehicle to the rental area.[1] Golden Gate employees were expected to keep their work area neat and clean while preparing a vehicle for rental. If a vehicle needed maintenance or had to be stored off-site, Golden Gate employees transport it as requested by Enterprise. While transporting vehicles around the rental facility, Golden Gate employees occasionally interact with Enterprise customers: they are expected to direct all inquiries to Enterprise employees, but may provide substantive answers instead. Plaintiffs were, at all relevant times, employees of Golden Gate.

Chapter 7.45 of the City of SeaTac Municipal Code was passed by voter initiative in 2013. It requires certain hospitality and transportation employers in the City of SeaTac to pay their employees $15.00 per hour, adjusted annually for inflation, and to guarantee certain other benefits. The first issue in this case is whether Golden Gate falls within the definition of "Transportation employer," which means:

> 1. A person, excluding a certificated air carrier performing services for itself, who:
>
> a. Operates or provides within the City any of the following: any curbside passenger check-in services; baggage check services; wheelchair escort services; baggage handling; cargo handling; rental luggage cart services; aircraft interior cleaning; aircraft carpet cleaning; aircraft washing and cleaning; aviation ground support equipment washing and cleaning; aircraft water or lavatory services; aircraft fueling; ground transportation management; or any janitorial and custodial services, facility maintenance services, security services, or customer service performed in any facility where any of the services listed in this subsection are also performed; and
>
> b. Employs twenty-five (25) or more nonmanagerial, nonsupervisory

---

[1] Two of the named plaintiffs state that Golden Gate also provided transport and fleet services at SeaTac for Alamo and National car rental companies. Taking the evidence in the light most favorable to plaintiffs, the Court will assume for purposes of this motion that Golden Gate provides services only for Enterprise, a fact that weighs in plaintiff's favor under the economic reality test of Becerra v. Expert Janitorial, LLC, 181 Wn.2d 186, 196-97 (2014).

ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT AND LEAVE TO AMEND - 2

employees in the performance of that service.

2. A transportation employer also includes any person who:

a. Operates or provides rental car services utilizing or operating a fleet of more than one hundred (100) cars; shuttle transportation utilizing or operating a fleet of more than ten (10) vans or buses; or parking lot management controlling more than one hundred (100) parking spaces; and

b. Employs twenty-five (25) or more nonmanagerial, nonsupervisory employees in the performance of that operation.

SeaTac Municipal Code 7.45.010(M).

In resolving what is essentially a legal issue of statutory construction, the Court's "fundamental purpose . . . is to ascertain and carry out the intent of the legislature." In re Schneider, 173 Wn.2d 353, 363 (2011).[2] If, after considering the statute as a whole and related statutes which may shed light on the legislature's intent with regards to the provision in question, there is no ambiguity, the plain meaning of the statutory language controls. Tracfone Wireless, Inc. v. Dep't of Revenue, 170 Wn.2d 273, 281 (2010); Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wn.2d 1, 11 (2002). If, however, two reasonable interpretations arise from the language of the statute and related statutes, the Court may resort to the rules of statutory construction, relevant legislative history, and case law for assistance in determining the legislature's intent. Cerrillo v. Esparza, 158 Wn.2d 194, 203-04 (2006); Anthis v. Copland, 173 Wn.2d 752, 756 (2012). If an ambiguity is found in a voter initiative, the Court may also "examine the statements in the voters pamphlet in order to determine the voters' intent." Amalgamated Transit, 142 Wn.

---

[2] Voter initiatives are interpreted according to the general rules of statutory construction. Roe v. TeleTech Customer Care Mgmt. (Colo.), LLC, 152 Wn. App. 388, 396 (2009). The object of the Court is to ascertain the collective intent of the voters who enacted the measure. Amalgamated Transit Union Local 587 v. State, 142 Wn.2d 183, 205 (2000).

ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT AND LEAVE TO AMEND - 3

2d at 205.

Plaintiffs argue that Golden Gate is a "Transportation employer" for purposes of the ordinance because it provides janitorial services and customer service at the airport. Each term is considered below.

**A. "Janitorial Services"**

Two of the named plaintiffs state that their job duties included cleaning the area of the rental car facility in which they worked and that the Golden Gate service agents were "the only workers that performed janitorial services in this area." Dkt. # 33 at ¶ 9; Dkt. # 34 at ¶ 8. "Janitorial Services" is not defined in the ordinance, but the term is ordinarily used to mean cleaning and maintenance services in an office or building. The SeaTac car rental facility is a building, and it is plausible that someone changes the light bulbs, empties the trash, washes the windows, and/or scrubs the floors. Mr. Jees and Mr. Mohamed provide no details regarding the "janitorial" tasks they perform, however, simply noting that they clean their work area as part of their job duties. Mr. El-Rassy, the Vice President of Golden Gate, clarifies that:

> Each station in the service area contains a vacuum, gas pump, and trash bin. A service agent will drive the rental vehicle into a station, remove any trash or debris from the vehicle, vacuum and fill the vehicle with gas before driving it to the car wash. The service agent is expected to put any trash or debris from the car into the trash bin in his or her station. If the service agent, while cleaning out the vehicle, has placed or dropped any trash on the ground, he or she is expected to pick it up and place it in the trash bin. Service agents are also generally expected to keep their work area neat and tidy.

Dkt. # 36 at ¶¶ 2-3. Putting one's trash in a trash bin and keeping a neat work area is not the provision of "janitorial services" as that term is normally used. Plaintiffs' position that any entity whose employees throw trash in the trash bin provides "janitorial services" is

ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT AND LEAVE TO AMEND - 4

unreasonable.

**B. "Customer Service"**

Plaintiffs also argue that, because Golden Gate' employees respond to questions posed by Enterprise customers, Golden Gate provides "customer service" within the Sea-Tacoma International Airport (*i.e.*, within the facility where curbside check-in, aircraft refueling, and the other services listed in Section M(1) are performed) and is therefore a "Transportation employer." A review of the ordinance as a whole shows that "customer service" has a narrower meaning than the one posited by plaintiffs. If every person who assisted a customer in the course of providing some other service were engaged in customer service for purposes of the ordinance, there would be no need to include in the list of "Transportation employers" those who provide curbside passenger check-in, wheelchair escort, or baggage check services. Providers of those services interact with and assist customers on a regular basis, and yet Section M includes a specific reference to the services the employer's actually offer – curbside check-in, for example – rather relying on the catch-all term "customer service." Read in context, the activities listed in Section M, such as "customer service," are specific functions or services offered by certain SeaTac employers. They are job descriptions, not simply a list of tasks that an employee might occasionally perform. Plaintiffs' preferred construction of "customer service" to include every person who serves customers in the City of Seatac is unreasonable in that it would make many of the activities listed redundant. The Court finds that "customer service" under SeaTac Municipal Code 7.45.010(M)(1) includes employers who provide customer service as a business venture, generally for a fee or other compensation, not as a one-off activity wholly collateral to the employer's primary operation. Taking the time to direct someone to the nearest bathroom does not convert a

ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT AND LEAVE TO AMEND - 5

baggage handler into a customer service representative any more than stooping to pick up a discarded coffee cup converts a customer service representative into a janitor. "Customer service," read in context, is not simply any person who assists a customer while in the airport facility, but rather includes only those who offer and provide that particular service as part of their business operation. Golden Gate operates and provides rental car fleet services: it does not provide customer service for purposes of the ordinance.

**C. Leave to Amend**

For the reasons discussed above, Golden Gate is not a "Transportation employer" for purposes of the ordinance. "Transportation workers" entitled to the increased minimum wage and other benefits offered by the ordinance are those who are employed by a "Transportation employer." Thus, plaintiffs' claims for relief against Golden Gate fail as a matter of law and cannot be saved by amendment. Plaintiffs nevertheless seek leave to amend their complaint to add claims against a different entity, EAN Holdings, on the ground that EAN Holdings is their employer under the economic realities test set forth in Becerra v. Expert Janitorial, LLC, 181 Wn.2d 186, 196-97 (2014).

Assuming for purposes of this motion that plaintiffs can allege, consistent with their Rule 11 obligations, that EAN Holdings is their employer, that it operates a rental car service utilizing a fleet of more than 100 cars, and that it employs at least 25 people, they may be able to assert a plausible claim for relief against that entity. "Every employer, including a joint employer, has the same duties" under the minimum wage laws. Becerra, 181 Wn.2d at 196. If plaintiffs were actually employed by EAN Holdings under the economic realities test, that company bears the burden (independent of any obligation Golden Gate might have) of complying with the ordinance. An employer that meets the

ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT AND LEAVE TO AMEND - 6

definition of "Transportation employer" cannot avoid its wage obligations by entering into a subcontracting agreement that is a mere subterfuge or sham. Plaintiffs will be given an opportunity to allege and prove that that is what happened here.

For all of the foregoing reasons, Golden Gate's motion for summary judgment (Dkt. # 29) is GRANTED. All claims against Golden Gate are hereby DISMISSED. Plaintiffs shall have fourteen days from the date of this Order to file an amended complaint adding EAN Holdings as the employer-defendant. If an amended complaint is not timely filed, judgment shall be entered in favor of defendant and against plaintiffs.

Dated this 4th day of January, 2017.

*[signature]*

Robert S. Lasnik
United States District Judge